David S. Ratner, Esq.
David Ratner Law Firm, LLP
david@davidratnerlawfirm.com
33 Julianne Court
Walnut Creek, CA 94595
Telephone: (917) 900-2868
Facsimile: (925) 891-3818
*Attorney for Plaintiff and the Class*

[Additional counsel appearing on signature page]

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STEVEN LYNN**, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | **CLASS ACTION COMPLAINT** |
| *v.* | **DEMAND FOR JURY TRIAL** |
| **GET TOGETHER, INC. D/B/A IRL APP** a Delaware corporation and **SCOTT BANISTER** | |
| *Defendant*. | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Steven Lynn brings this Class Action Complaint and Demand for Jury Trial against Defendants Get Together, Inc. and Scott Banister to stop Defendants' practice of sending unsolicited text messages to cellular telephones and otherwise engaging in prohibited telemarketing, and to obtain redress, including injunctive relief, for all persons injured by their conduct. Plaintiff Lynn, for his Complaint, alleges as follows upon personal knowledge as to himself and his own

acts and experiences, and, as to all other matters, upon information and belief,
including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1.     Defendant Get Together is a mobile application that encourages users
to make plans, invite friends and socialize through their app.[1]

2.     Defendant Scott Banister is the co-founder of the app which is
designed to spam consumers cell phones with 'notification messages' which are
really just marketing messages to download Get Together's IRL app.

3.     In an attempt to promote the app, Defendants conducted (and continue
to conduct) a wide-scale telemarketing campaign that features the sending of
unsolicited text messages to consumers' cellular telephones—all in violation of the
Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

4.     By sending the autodialed text messages at issue in this Complaint,
Defendants caused Plaintiff and the members of the Classes actual harm and
cognizable legal injury. This includes the aggravation, annoyance, and nuisance and
invasions of privacy that result from the receipt of such calls.

5.     The TCPA was enacted to protect consumers from unsolicited text
messages like those alleged in this case. In response to Defendants' unlawful

---

[1] https://itunes.apple.com/us/app/irl-lets-hang/id1332596741?ls=1&mt=8

conduct, Plaintiff files the instant lawsuit and seeks an injunction requiring Defendants to cease all unsolicited text messaging activities to consumers as complained of herein and an award of statutory damages to the members of the Classes under the TCPA together with costs.

## PARTIES

6.      Plaintiff Steven Lynn is a natural person and resident of Texas.

7.      Defendant Get Together, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 301 Bryant Street #200, San Francisco, California.[2]

8.      Defendant Scott Banister is a resident of San Francisco and co-founder of the IRL app.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as the action arises under the TCPA.

10.     This Court has personal jurisdiction over Defendants and venue is proper under 18 U.S.C. § 1391(b) because Defendants reside in this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

---

[2]https://businesssearch.sos.ca.gov/CBS/Detail

**COMMON FACTUAL ALLEGATIONS**

11.　Get Together, Inc. created an app called IRL which is designed to allow consumers to interact with friends and relatives within the app and to plan events and get-togethers.

12.　Defendant Scott Banister is the co-founder of the IRL app[3] [4] which was designed to use 'growth hacking' to collect contact information from a consumer's phone and to send that list of contacts automated text messages without their consent.

13.　Get Together, Inc. was formerly the GatherApp, Inc.[5]

14.　The Gather App was created, advertised, and implemented much like the IRL app.

15.　The Gather App was banned by Apple and other app stores for their abusive spam telemarketing techniques and privacy invasions.

16.　In addition, the Gather App was sued in four different lawsuits for violations of the TCPA in 2017, much like the IRL app today over their unsolicited text messages similar to the ones in this complaint.

17.　GatherApp rebranded as Get Together, Inc and re-created an app, the IRL app, which has similar functions and built-in "growth hacking" which

---

[3] https://www.crunchbase.com/organization/irl-app#section-overview
[4] https://medium.com/@abeshafi/irl-wants-to-get-you-together-offline-ba137dec5d10
[5] https://businesssearch.sos.ca.gov/Document/RetrievePDF?Id=03883457-23436700

originally prompted the lawsuits a few years before by collecting information about users and sending them unwanted text messages inviting them to download their app.

18.     The IRL app is designed to harvest a consumer's contacts upon downloading the app and tricking the consumer into "nominating" his contacts which the IRL app sends automated text messages from their own servers unbeknownst to the consumer "inviting" them to download the app to see who nominated them for whatever award the app came up with.

19.     The text message which is sent to the *nominee* is not customized based on the identity of the nominator or the nominee.  Defendants designed and fully controlled the process of sending out the text messages and its generic content and invitation to download their app.

20.     The user that initially downloaded the IRL app is not notified in any conspicuous way that when she or he clicks on a contact's name to nominate them that the app will automatically send that contact an *automatic text message* directing them to download Defendants' app.



*Figure 1: No disclosure that the consumer's contacts are stored so that when the consumer nominates a friend from his contacts within the app, Defendant will automatically send a text message to that friend without prior written consent.*




*Figure 2: No written consent or even conspicuous consent that the app will send text messages to the contact when nominating them.*



*Figure 3: No written consent or even conspicuous consent that the app will send text messages to the contact when nominating them.*

21.     The purpose of the text messages is to get recipients to download the IRL app.

22.     Consumers who receive these messages have not consented to receive them.  Also, a consumer cannot give prior written consent for a company to send text messages to someone else.

23.     The text messages were advertisements in that the messages were material advertising the commercial availability or quality of Defendant's property, goods, or services –Defendants' IRL app.

24.    As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

25.    Yet in violation of this rule, Defendants fail to obtain any prior express written consent to send these autodialed text messages to cellular telephone numbers.

26.    In addition, Defendants are sending text messages to consumers who have registered on the Do Not Call registry.

27.    Many consumers have taken to voicing their frustrations about Defendants' unsolicited text messages online:

- "Spammy garbage How on earth does Apple let this app in the App Store when it's function seems to be spam people with unwanted texts? Seriously?"[6]

- "I didn't ask for this and it never ends[.] I don't want this app! Yet they spam my phone every week with "nominations" and there is no way to get them to leave me the hell alone! Every week it's from a different phone number so I can't even block the number their using for some peace."[7]

---

[6] https://itunes.apple.com/us/app/irl-lets-hang/id1332596741?ls=1&mt=8
[7] *Id.*

- "I don't want this[.] Got a random text from a Georgia number (I don't know anyone from Georgia so I doubt it's a real person) to join this."[8]

- "Text spammer. Text me about 8 times and call blocker on my iphone would not stop it. Also had Verizon block it and that didn't stop it either. If I get more I am going to call Verizon back. Wants to direct you to a web site to download an app. DON'T DO IT!"[9]

- "Keep getting the following text message 'Hey, someone you know nominated you! Check it out – irl.co/dl Reply HELP for help, STOP to unsubscribe'"[10]

- Thank you!!  I've received 2 texts from different 844 numbers with the same nomination message.  I haven't clicked on them, thank goodness.  Do you know how to get these blocked?[11]

28.    At all times material to this Complaint, Defendants were aware that unsolicited telemarketing text messages were being sent to consumers' cellular telephones.

29.    In sending the text messages that form the basis of this Complaint, Defendant utilized an automatic telephone dialing system ("ATDS") in violation of the TCPA. Specifically, the hardware and software used by Defendants has the capacity to generate and store random numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention.

---

[8] *Id.*
[9] https://800notes.com/Phone.aspx/1-844-647-5426
[10] *Id.*
[11] *Id.*

30.     The automated text message is sent from the app, some time after a consumer *nominates* one of his contacts.

31.     The text message is not sent by the consumer directly. Rather, the text message is sent or directed to be sent by the app itself.

32.     For example, the Plaintiff received the following text message from the phone number 833-758-9659.  This phone number does not belong to a consumer, but rather is being used by the Defendant to send its text messages.  Defendant's app uses many such phone numbers to send its text messages on its behalf.



33.     When a consumer receives the text message, they are directed to the website inviteirl.com/dl which leads to a download page to download Defendant's app.

34.     The text message contains the following information "Reply INFO for info, STOP to unsubscribe." When a consumer replies STOP to the phone number in which sent the text messages which is owned or controlled by the app, the consumer receives a notification acknowledging that his action "blocks all texts sent from this number" and to "Text back 'unstop' to receive messages again."  To be clear, this automated reply message is not sent from a cell phone carrier but from the app itself.

### The App Sends Text Messages to Consumers After They Have Specifically Opted Out from Receiving Text Messages from the App

35.     One major problem with the design of the app is that the opt-out request stops the app from sending text messages only from the particular number that receives the opt out request.  In Plaintiff's case he continued to receive other text messages from the app from Defendants' other phone numbers despite his opt out request and acknowledgment of his opt out from the Defendant's app.

36.     In essence, the app is not processing opt-out requests as it continues to send text messages to consumers even though it has received opt-out requests.

### FACTS SPECIFIC TO PLAINTIFF STEVEN LYNN

37.     Plaintiff's cell phone number has been registered on the Do Not Call

registry since October 1, 2005.

38.     On March 27, 2018 at 9:22 AM, Plaintiff received a text message from

Defendant on his cellular telephone using phone number 844-607-3607 stating,

"Hi! Someone you know complimented you – You can use IRL to vote on your

friends, find out who voted on you, and make plans – irl.co/dl/ [hands-up emoji]

Reply INFO for info, STOP to unsubscribe".

39.     Plaintiff replied "STOP" to the text message he received from

Defendant using phone number 844-607-3607 on April 11, 2018 at 1:38 PM. He

immediately received a text message back stating, "NETWORK MSG: You replied

with the word "stop" which blocks all texts sent from this number. Text back

"unstop" to receive messages again. At 4:43 PM on Plaintiff sent "STOP" again.



40.    Plaintiff received a second text message from Defendant on April 7, 2018 at 9:21 AM, this time from phone number 833-758-9659. The text reads, "Hey! A friend said something nice about you – Find out who voted for you, and more on IRL – inviteirl.com/dl/ [happy face emoji] Reply INFO for info, STOP to unsubscribe."

41.    Plaintiff sent a reply back to Defendant on April 11, 2018 stating "STOP" at 7:37 PM. As with the previous opt-out request, he received an immediate response stating, "NETWORK MSG: You replied with the word "stop" which blocks all texts sent from this number. Text back "unstop" to receive messages again. At 7:37 PM Plaintiff sent "STOP" again.

42.    Plaintiff received a third text message from Defendant on April 11, 2018 at 11:08 AM using phone number 833-425-0997. The text reads, "Good news,

Someone said something nice about you – Find out who and more on IRL –

inviteirl.com/dl/ [fire emoji] Reply INFO for info, STOP to unsubscribe".

43.     Screenshots of the Text Messages are reproduced below:



44.     The hyperlink in the first Text Message, http://irl.co/dl/ leads directly

as a shortcut to https://itunes.apple.com/us/app/irl-lets-

hang/id1332596741?ls=1&mt=8. On this page, the app for IRL – Let's Hang can be

downloaded. A screenshot of the iTunes link is provided below:



45.     The hyperlink provided in the two successive Text Messages inviteirl.com/dl also leads to https://itunes.apple.com/us/app/irl-lets-hang/id1332596741?ls=1&mt=8.

46.     The Text Messages were sent to Plaintiff without his prior express written consent as mandated by the TCPA.

47.     Plaintiff does not have a relationship with Defendant, has never provided his telephone number to Defendant, and has never requested that Defendant send text messages to him or offer its services. Simply put, Plaintiff has

never provided any form of prior express written consent to Defendant to send solicitation text messages to him and has no business relationship with Defendant.

48.     Defendant at all times was and is aware that the above-described text messages were and are being made to consumers like Plaintiff who had not consented to receive them.

49.     By placing unauthorized text messages to consumer's cellular telephones as alleged herein, Defendant has caused consumers actual, concrete harm and annoyance.

50.     In order to redress these injuries, Plaintiff, on behalf of himself and Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited autodialed text messages to cellular telephones.

51.     On behalf of the Class, Plaintiff seeks an injunction requiring Defendant to cease all unauthorized autodialed text messaging activities, and an award of statutory damages to the Class members, together with costs.

## CLASS ALLEGATIONS

52.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and all others similarly situated and seek certification of the following Classes:

**Autodialed No Consent Class:** All persons in the United States who within four years prior to the filing of the initial complaint (1) Defendants (or a third person acting on behalf of Defendants) sent text messages, (2) to the person's cellular telephone number, (3) for substantially the same reason Defendants text messaged Plaintiff, and (4) for whom Defendants claim they obtained prior express written consent in the same manner as Defendants claim they supposedly obtained prior express written consent to send automated text messages to the Plaintiff.

**Do Not Call Registry Class**: All persons in the United States who within four years prior to the filing of the initial complaint (1) Defendants (or a third person acting on behalf of Defendants) texted more than one time on his/her residential telephone number; (2) within any 12-month period (3) where the telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the substantially the same reason Defendants text messaged Plaintiff; and (5) for whom Defendants claim they obtained prior express written consent in the same manner as Defendants claim they supposedly obtained prior express written consent to send automated text messages to the Plaintiff.

**Internal DNC:** All persons in the United States who within four years prior to the filing of the initial complaint (1) Defendants (or a third person acting on behalf of Defendants) texted more than one time on his/her residential telephone number; (2) within any 12-month period (3) for the substantially the same reason Defendants text messaged Plaintiff.

53.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, their subsidiaries, parents, successors, predecessors, and any entity in which Defendants or its parents have a controlling interest and their current or

former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendants have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions following appropriate discovery.

54.     **Numerosity**: The exact size of the Classes is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendants sent autodialed text messages to thousands of consumers who fall into the definition of the Classes. Members of the Classes can be easily identified through Defendants' records.

55.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes includes, but are not necessarily limited to the following:

    (a) whether Defendants' conduct constitutes a violation of the TCPA;

    (b) whether Defendants utilized an automatic telephone dialing system to send text messages;

    (c) whether Defendants sent text messages to telephone numbers registered on the DNC;

(d) whether Defendants sent text message prior to instituting adequate internal do not call list policies and procedures;

(e) whether members of the Class are entitled to statutory and treble damages based on the willfulness of Defendant's conduct; and

(f) whether Defendant obtained prior express written consent to contact any class members.

56.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest averse to the Classes.

57.    **Appropriateness**: This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff.  Additionally,

the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

### **FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff the Autodialed No Consent Class)**

58.    Plaintiff repeats and realleges paragraphs 1 through 57 of this Complaint and incorporates them by reference.

59.    Defendants sent autodialed text messages to cellular telephone numbers belonging to Plaintiff and other members of the Autodialed No Consent Class without first obtaining prior consent to send such autodialed text messages.

60.    By sending the unsolicited text messages to Plaintiff and the cellular telephones of members of the Autodialed No Consent Class without their prior written express consent, and by utilizing an automatic telephone dialing system to make those calls, Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii) of the TCPA.

61.     As a result of Defendants' violations of 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiff and the other members of the Autodialed No Consent Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

62.     In the event that the Court determines that Defendants' conduct was willful or knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Autodialed No Consent Class.

<u>**SECOND CAUSE OF ACTION**</u>
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiffs and the Do Not Call Registry Class)**

63.     Plaintiff repeats and realleges paragraphs 1 through 57 of this Complaint and incorporates them by reference.

64.     47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

65.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

66.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiffs and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

67.     As a result of Defendant's conduct, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $1,500 in damages for such violations.

## THIRD CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Internal Do Not Call Class)**

68.     Plaintiff repeats and realleges paragraphs 1 through 57 of this Complaint and incorporates them by reference.

69.     Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber

unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or

address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

47 C.F.R. § 64.1200(d).

70.     Defendant or its agent sent text messages to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls.

71.     The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

72.     Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call List Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Steven Lynn, individually and on behalf of the Classes, prays for the following relief:

73.     An order certifying the Classes as defined above, appointing Plaintiff Lynn as the representative of the Class, and appointing his counsel as Class Counsel;

74.     An award of monetary damages for Plaintiff and the Class Members;

75.     An order declaring that Defendants' actions, as set out above, violate the TCPA;

76.     An injunction requiring Defendants to cease all unsolicited text messaging activities, and otherwise protecting the interests of the Class;

77.     Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**STEVEN LYNN**, individually and on behalf of a Class of similarly situated individuals

Dated: June 3, 2019

By: _/s/ David Ratner_
David S. Ratner, Esq.
David Ratner Law Firm, LLP
33 Julianne Court
Walnut Creek, CA 94595

Rachel E. Kaufman (Cal Bar no. 259353)
rachel@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881